His Honor left it to the jury, as a question of fact, whether, at the time of the transaction, an actual partnership existed between the brothers; and instructed them that if it did not, they must find a verdict for the defendant. The jury were also instructed that if the copartnership did then actually exist, but the money was borrowed for Watson only, and that was known, the plaintiff could not recover. But that if the partnership then existed, and it was borrowed professedly for the firm, and was so understood by the lender and the surety, then the plaintiff might recover, notwithstanding it was in fact desired to make (649) up Watson's part of the capital. The jury returned a verdict for the plaintiff, and the defendant moved for a new trial for error in the latter part of the charge; which being refused and judgment given, he appealed.
We understand the general rule of law to be that where a partnership is formed each partner is the accredited agent of the rest, whether they be active, nominal or dormant, and has authority as such to bind them either by simple contracts respecting the business of the firm or by negotiable instruments circulated in its behalf to any person dealing bona fide. *Page 511 
But it is also the law that one partner cannot bind his copartners by deed
unless he have express authority by deed for that purpose. The bond, therefore, to Summers was not in law the bond of both the Woodburns, and upon it Summers could enforce payment only from Watson Woodburn. In equity, however, we apprehend that if it were shown that the contract for the loan was made in behalf of both the partners, and that the security was by the contract intended to be one binding both the partners, but through mistake had been so executed as to bind one only, Summers might have had relief against both. As the bond, however, was in law the obligation of the partner only who executed it, if nothing else appeared in this case than that the plaintiff executed it as surety, the only inference that could be rightfully drawn therefrom would be that he was the surety of the principal in the bond.
But it is to be recollected that the contract between the principal and surety — though it may be inferred from the nature of the security given to the creditor — is not contained therein, nor evidenced thereby, but is a collateral contract — usually a parol one, which may therefore be shown by any competent and satisfactory evidence. For instance, it could not be denied but that if the plaintiff had, at the request of both the Woodburns, borrowed money in his own name and on (650) his sole responsibility, he could have regarded them as his principals, although neither of them was bound to the lender. And we understand that in this case it is not denied by the defendant's counsel that if the money had been borrowed for, and received by, both the Woodburns, the plaintiff — notwithstanding the insufficiency of the bond to bind the Woodburns to Summers — could hold them both as his principals. His engagement having been entered into at their request, they would be bound to indemnify him from loss thereby sustained. The question then seems narrowed to this — whether a responsibility incurred upon a request made by one professedly in behalf of himself and partners, in relation to their common business, but in truth for his individual benefit, is, in law, incurred at the request of both. We think it is. If one of two partners purchase goods ostensibly for the partnership concern, but in truth for himself, the firm is bound by his act — he is the agent of the firm in relation to its business; and third persons contracting with him as that agent, contract with the firm; so if he borrow money for the firm, but misapply it, the firm is bound. When credit is advanced at the request of such agent, in behalf of the alleged business of the co-partnership, it would seem that the contract therefor is as much made with the concern as when goods are purchased or money lent. It is also insisted that there was no evidence in the case justifying the instruction complained of. The evidence is certainly not very full or definite. We, however, have not the right to set aside a verdict because it is not upheld *Page 512 
by the weight of testimony; and we cannot say there was no evidence. The testimony of Ludwick Summers would seem to show that Watson Woodburn alleged that his negotiation was for the firm; and we think that the jury was well warranted in understanding him to represent that the partnership had been then formed, although the business under it was not to commence until his brother's return. The execution of the note in the name of Watson Woodburn Co., after this representation, was still holding out the profession that he was negotiating not for himself only, but for himself and a partner. And this view of the case may have been strengthened by the remarks of the defendant, which (651) we understand to have been made after he had resolved to contest his liability to Summers — "that the bond had not been signed as he thought, or as the witness told him it was; that he had received the money, but that it was Watson's part of the stock." It is possible, indeed, that the jury might have regarded the latter part of this observation as an excuse for refusing to pay a partnership debt, after he had ascertained that he could set up a legal objection to the note.
As we do not see any error of law in the record, we cannot reverse the judgment. Let it be affirmed.
PER CURIAM. Judgment affirmed.
Cited: Dickson v. Alexander, 29 N.C. 4; Partin v. Lutterloh, 59 N.C. 344;Hartness v. Wallace, 106 N.C. 431; Smith v. Haynes, 82 N.C. 450;Dudley v. Bland, 83 N.C. 224; Fisher v. Pender, 52 N.C. 484.
(652)